Major William R. PERRY, Appellant,

v.

**COMMANDING OFFICER,
HEADQUARTERS et al.**

No. 74–1287.*

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 4, 1975.

Decided Oct. 26, 1976.

As Amended Nov. 24, 1976.

---

\* Although 73–2136, *Fairbank v. Schlesinger* and 74–1287, *Perry v. Commanding Officer* were argued together only 74–1287 is being decided in this opinion since 73–2136 was decided on December 30, 1975. 174 U.S.App.D.C. 359, 533 F.2d 586.

David A. Jones, Washington, D.C., was on the brief for appellant.

Richard A. Graham, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael A. Katz, Royce C. Lamberth, and David R. Addis, Asst. U. S. At-

tys., Washington, D.C., were on the brief for appellees.

Before TAMM, ROBINSON and Mac-KINNON, Circuit Judges.

Opinion for the court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

The appeal of Perry, now a permanent Captain in the *Regular* Army of the United States, raises questions concerning the reenlistment rights under 10 U.S.C. § 3258 (1970) [1] of a former enlisted man in the Regular Army who, in June 1959, was discharged as an enlisted man in order to accept a temporary commission as an officer in the Army *Reserve.* We decide that Perry's right to reenlist lapsed six months after his Reserve Commission was terminated by his acceptance of a permanent commission in the Regular Army and that he never acquired any similar reenlistment rights stemming from his present status in the Regular Army or from his status in the concurrent temporary grade in the Army of the United States that he has held since he was commissioned in 1959.

I.

Appellant Perry enlisted in the Regular Army on October 27, 1953, and served in that status until his separation from active duty and transfer to enlisted Reserve status on August 24, 1955. At that time, under the Universal Military Training and Service Act (65 Stat. 75), he was obligated to serve in the United States Army Reserve in an inactive status until the expiration of an eight-year statutory service obligation.

1. 10 U.S.C. § 3258 (1970) provides:

Any former enlisted member of the Regular Army who has served on active duty as a Reserve officer of the Army, or who was discharged as an enlisted member to accept a temporary appointment as an officer of the Army, is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in line of duty, if (1) his service as an officer is terminated by an honorable dis-

charge or he is relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge, and (2) he applies for reenlistment within six months (or such other period as the Secretary of the Army prescribes for exceptional circumstances) after termination of that service. However, if his service as an officer terminated by a general discharge, he may, under regulations to be prescribed by the Secretary of the Army, be so reenlisted. Aug. 10, 1956, ch. 1041, 70A Stat. 179; Aug. 8, 1958, Pub.L. 85–603, § 1(1), 72 Stat. 526.

Almost three years after his separation from active duty, on August 4, 1958, appellant reenlisted in the Regular Army for a three-year term. Shortly thereafter he completed Officer Candidate School, and on June 23, 1959, he was discharged from his Regular Army enlisted status [2] and commissioned as a Second Lieutenant in the *Reserve component* of the Army (Appellee App. 14). On June 24, 1959, he began a two-year obligated tour of duty as a Reserve Officer on active duty (Appellee Br. 3).

Concurrently with his appointment as a officer in the Army Reserve appellant was appointed a Second Lieutenant in the Army of the United States (hereafter AUS), *without component,* (Appellee App. 26). On December 24, 1960, appellant was promoted

**2.** History of Perry's Army service:

| 12. APPOINTMENTS | | DATE OF | | |
|---|---|---|---|---|
| Grade | Type | Appointment | Eligibility | Rank |
| 2LT | USAR | 24 Jun 59 | 24 Jun 59 | |
| 2LT | AUS | 24 Jun 59 | | 24 Jun 59 |
| 1LT | AUS | 24 Dec 60 | | 24 Dec 60 |
| 2LT | RA | 12 Sep 61 | | 12 Sep 61 |
| 1LT | RA | 24 Jun 62 | | 24 Jun 62 |
| CPT | AUS | 24 Jun 63 | | 24 Jun 63 |
| CPT | RA | 24 Jun 66 | | 24 Jun 66 |
| MAJ | AUS | 26 Jul 67 | | 26 Jul 67 |

(Appellant App. 11)

| | USAR | AUS | Regular Army |
|---|---|---|---|
| Enlisted | | | Oct 27, 1953 |
| Released from active duty[a] | | | Aug 24, 1955 |
| Reenlisted[b] Codification Aug 10, 1956 | | | Aug 4, 1958 |
| Discharged to accept Reserve Commission | | | June 23, 1959 |
| Commissioned as 2nd Lt.[c] | June 24, 1959 | June 24, 1959 | Sept 12, 1961[d] |
| Promoted to 1st Lt | | Dec. 24, 1960 | June 24, 1962 |
| Promoted to Captain | | June 24, 1963 | June 24, 1966 |
| Promoted to Major | | July 26, 1967 | (e) |

[a] And transferred to Reserve Status until expiration of eight-year obligation (65 Stat. 75) (Appellee App. 6).

[b] For a three-year term (Appellee App. 7-8).

[c] For two-year obligated tour of duty as a Reserve Officer (Appellee App. 12, 15).

[d] The appointment was dated 15 August 1961 (Appellant App 17). Prior to this appointment Perry on 4 March 1961 had applied for retention for an indefinite period (Appellee App 15)—accepted 22 March 1961 (Appellee App. 17). Both the application and the acceptance specifically referred to the lack of permanence in active service.

[e] Perry was passed over two times for promotion to Major, Regular Army. It was the second pass over that triggered his notification of his impending discharge under AR 635-120 (1968) (Appellant Br. 9, Appellee Br. 4).

and appointed to the rank of First Lieutenant (AUS); and on March 4, 1961, he applied for indefinite retention on active duty as an officer in the Army Reserve (*id.* at 15). This latter request was approved on March 22, 1961.[3]

On March 22, 1961, appellant applied for appointment as an officer in the Regular Army (Appellee App. 18–24). His application was accepted and on August 15, 1961, he was appointed a Second Lieutenant in the Regular Army (hereafter RA). The order approving his appointment of August 15, 1961, stated:

*If you are presently serving on active duty in an Army of the United States status you will continue to so serve without interruption of such appointment unless appointed to a higher grade in the Regular Army.*[4]

**3.** 1. Your request for retention on active duty under the provisions of AR 135–215 is approved effective 24 June 1961. You will be retained on active duty until further notice.

2. You are advised that, under current regulations, you may be released from active duty for any one of the following reasons:

a. Voluntary request in accordance with applicable regulations.

b. Forced reduction in Army strength (accomplished by Department of the Army board action only).

c. Promotion passover as prescribed in applicable regulations.

d. Failure to meet acceptable standards of efficiency or conduct or failure to meet standards prescribed for probationary officers.

e. Completion of the maximum Reserve commissioned service or attainment of the maximum age, whichever occurs first, as prescribed in Sections V and VI, AR 135–173.

f. Attainment of eligibility for retirement under the provisions of paragraph 6a(1), AR 635–130 (completion of 20 years active Federal service, 10 of which was commissioned). Reasons for retention beyond attainment of retirement eligibility will be governed by the provisions of AR 135–215.

(Appellee App. 17).

**4.** 10 U.S.C. § 3442(c) (1970) provides:

(c) Subject to subsections (a) and (b), a regular commissioned officer, or a reserve commissioned officer who is serving on active duty, may be appointed in a temporary grade that is equal to or higher than his regular or reserve grade, without vacating any other grade held by him. Under regulations to be prescribed by the Secretary, appointments made under this subsection shall

(Appellant App. 17) (emphasis added). As to appellant's status after he was commissioned in the Regular Army, the brief for the Army states at p. 4:

He accepted the appointment on September 12, but continued to serve in his *"temporary,"* or Army of the United States (AUS), grade of First Lieutenant as reflected by Item 12 on appellant's Form 66 (App. B at 11). Appellant has served continuously since that time and has risen to the *"temporary,"* or "AUS," grade of major and the "permanent," or "RA," grade of captain.

(Emphasis added). Appellant is thus presently serving as a Captain on a permanent Commission in the Regular Army. Appellant has now twice been passed over for promotion to Major in the Regular Army. Following the second pass over appellant was notified that he would be discharged pursuant to Army Regulation 635–120 (Appellant Br. 9, Appellee Br. 4) within six months after the second pass over, *i. e.,* on or about November 1, 1973.

Appellant promptly applied to reenlist in the Regular Army under the provisions of 10 U.S.C. § 3258 (1970). On August 14, 1973, appellant was notified by order of the Secretary of the Army that:

1. In order to maintain a balanced career force within the current and future Army structure, and to preclude involuntary separation and promotion inequities within the enlisted grades, it has become necessary to implement more stringent enlistment and grade determination criteria.

2. Based on the foregoing and an overall evaluation of the applicant's qualifications as related to the current needs of the Army, *his enlistment is not favorably considered.*

(Appellant App. 16) (emphasis added).

Thereafter appellant exhausted his military administrative review remedies and failing therein, on October 26, 1973, filed the instant suit to compel the Army to accept his enlistment.

As of November 1, 1973, plaintiff had credit for approximately seventeen years active duty service. Under ordinary circumstances he would be qualified for full retirement benefits after twenty years of service, and, had he served eighteen years, he could not be retired involuntarily. 10 U.S.C. § 3913(b) (1970).

On cross-motions for summary judgment, the district court held against the contentions advanced by plaintiff-appellant and stated in an oral opinion:

In making that choice and accepting the benefits of matured tenure and the obvious status that attaches to a Regular Army officer, he took himself out of the statute [§ 3258].

(Appellant App. 22). The stay pending appeal which the district court ordered provides that, while the case is on appeal, plaintiff may continue serving in his present position as a Major in the Regular Army, but that time served beyond November 1973 (the effective date of termination of his active duty under his Regular Army Commission) shall not be considered to be qualifying time for retirement.[5] That is,

---

be made on a fair and equitable basis. Selections shall be based upon ability and efficiency with regard being given to seniority and age. Aug. 10, 1956, ch. 1041, 70A Stat. 195. The Order also stated:

The three year probationary period prescribed by title 10, United States Code, section 3814, commences with the consummation of this appointment. You should therefore familiarize yourself with the provisions of AR 635–105A, at your earliest convenience.

10 U.S.C. § 3814 (1970) provides:

The Secretary of the Army may discharge a regular commissioned officer who has less than three years of continuous service as a commissioned officer therein. However, such an officer may not be discharged because of his marriage, unless the marriage occurred within one year after the date of his original appointment. Aug. 10, 1956, ch. 1041, 70A Stat. 200.

5. FURTHER ORDERED that defendants shall retain the plaintiff on active duty as an officer of the United States Army for (a) a period of thirty (30) days from the date hereof, or (b) until such time as plaintiff shall file a notice of appeal of the judgment of this Court as aforesaid and move for a further stay in the Court of Appeals, whichever shall first occur. Order of January 15, 1974 (Appellant App. 26).

unless plaintiff's contentions are upheld here with respect to section 3258.

Since Perry on June 23, 1959, was discharged from his enlisted status in the Regular Army to accept a temporary Reserve Commission, the reenlistment right to which he claims he is entitled cannot be diminished below that provided in the statute enacted on August 8, 1958 (10 U.S.C. § 3258 (1970), *supra* note 1).

Some of the significant legislative history of this act, and its prior and subsequent modifications to date, is discussed in our opinion in *Fairbank v. Schlesinger,* 174 U.S. App.D.C. 359, 364–69, 533 F.2d 586, 591–96 (1975). It need not, therefore, be repeated here in its entirety. However, because appellant relies heavily upon the House Committee report on the 1956 amendments to the Act codifying the Armed Forces Laws as indicating a congressional intent to "restate existing law, not to make new law," [6] we set out the Act of July 14, 1939. The 1939 Act provided:

> That hereafter any warrant officer or enlisted man of the Regular Army who shall serve on active duty as a Reserve officer of the Army of the United States or who shall be discharged to accept a commission in the Army of the United States and whose active service as a commissioned officer shall terminate honorably, shall be entitled, without regard to any physical disqualification incurred, or having its inception, while on active duty in line of duty, to reappointment as warrant officer or to reenlistment in the grade held prior to such commissioned service, without loss of service or seniority and without regard to whether a vacancy exists in the grade of warrant officer or in the appropriate enlisted grade: *Provided,* That application for reappointment or reenlistment shall be made with-

in six months after the termination of such commissioned service in each case: *Provided further,* That warrant officers and enlisted men of the Regular Army shall be entitled to count active commissioned service in the Army of the United States as warrant or enlisted service for all purposes.

> Sec. 2. The Act approved March 30, 1918 (40 Stat. 501), is hereby repealed.

(53 Stat. 1001). Relying on this statute, appellant argues that the substantive provisions of the 1939 Act must be included within section 3258.

Appellant claims that he satisfies the requirements of section 3258 by virtue of being a former enlisted member of the Regular Army (1) who has served on active duty as a Reserve Officer of the Army, and (2) who was discharged as an enlisted member to accept a *temporary appointment* as an officer of the Army of the United States (AUS).

II.

We are immediately confronted with a question of statutory interpretation: whether Perry has a reenlistment right under the first entitlement clause of the statute. The answer depends upon the interpretation to be given the following provisions of the statute:

> Any former enlisted member of the Regular Army who has served on active duty as a *Reserve* officer of the Army . . . is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer . . . if (1) his service as an officer is terminated by an *honorable discharge* or he is relieved from active duty for a [proper] purpose . . . and (2) he applies for reenlistment within six months . . . after termination of that service.

A similar stay was issued by the Court of Appeals on March 8, 1974, to continue until further order of the Court.

**6.** The object of the new titles has been to restate existing law, *not to make new law.* Consistently with the general plan of the United States Code, the pertinent provisions of law

have been freely recorded and rearranged, *subject to every precaution against disturbing existing rights, privileges, duties, or functions.*

. . .

H.R.Rep.No.970, 84th Cong., 1st Sess. 8 (1955) (emphasis added).

10 U.S.C. § 3258 (1970) (emphasis added). In *Fairbank, supra,* we held that the intent of this statute required those claiming to be entitled to its benefits to apply for reenlistment within six months after the honorable termination of service under a reserve commission. We were there concerned with whether a *Reserve* officer was required to exercise his reenlistment right within six months of his *first* release from active duty. We held that he was not. We thus held that Fairbank had a right to reenlist as an enlisted man following his second tour of duty as a Reserve Officer if he enlisted within six months after his active service was terminated by an honorable discharge or by his being relieved from active duty. Since Fairbank's entire service as an officer was under a commission in the Army Reserve we were not faced with the problem created by Perry's acceptance on September 12, 1961, of a permanent commission as a Second Lieutenant[7] in the Regular Army.[8]

It is not questioned that Perry is a former enlisted man of the Regular Army who served on active duty as a *Reserve* officer of the Army, and that he generally satisfies the other eligibility provisions of the statute, except possibly the provision which requires him to apply for reenlistment "within six months . . . after [the] termination of *that service.*" (Emphasis added).

■ What limitations does the phrase "that service" impose on Perry's claim to a reenlistment right? In *Fairbank* we held that the phrase, when its prior wording is considered, "referred to commissioned status and could not have referred to active duty."[9] Thus, Perry could qualify if he applied for reenlistment within six months after his service as a commissioned officer in the reserve component is terminated by an honorable discharge or if he applied within a like period after "he is relieved from active duty" under such commission. From the entire context of the statute and its legislative history we interpret this provision to require formal application for reenlistment to be within six months after he is honorably discharged, or after he is relieved from active duty, from his service as a *reserve officer.* The entire thrust of the portion of the statute we are now interpreting is to grant reenlistment rights to former enlisted men who serve as officers on active duty in *Reserve* components. It is the termination of such service as a *Reserve* officer that triggers the running of the six month period and such termination may occur through an "honorable discharge" *or* by the officer being "relieved from active duty" in the Reserve component.

■ Perry argues that he has never received a formal discharge of any kind from his *reserve* commission and the record does not indicate that he has been formally ordered "relieved from active duty" service in his Regular Army and AUS commissions.[10] From this factual premise he further contends that the six month period within which he is required to apply for reenlistment never began to run because his service as a reserve officer was not terminated by an honorable discharge or in fact by any discharge. An honorable discharge, however, is not the only means of terminating a

---

7. Note 2 indicates Perry subsequently was promoted to 1st Lieutenant on June 24, 1962 and to Captain on June 24, 1966. *See* note 2 *supra.*

8. While the permanency of this commission might be challenged when it was issued on September 12, 1961, because it was subject to the three year probationary period prescribed by 10 U.S.C. § 3814, *supra* note 4, that period was successfully served and Perry's commission in the Regular Army for all purposes became as permanent as any other Regular Army commission on September 12, 1964.

9. *Fairbank v. Schlesinger, supra,* 174 U.S.App. D.C. at 373, 533 F.2d at 600.

10. As a practical matter, on September 12, 1964, when Perry successfully completed his three year probationary period under his *Regular* Army commission all vestiges of service under his Reserve commission were terminated, if not three years earlier. If we assume that his Reserve commission retained some vitality for section 3258 purposes until September 12, 1964, it was then that the six month period began within which he was required to reenlist or forfeit such right; or he was eligible to apply for reenlistment on September 12, 1961, at the earliest.

reserve officer's service so as to trigger the statutory six month period. Equally operative to accomplish this objective under the present wording of the statute is relief from active duty for a proper reason. Here Perry was, to all intents and purposes, relieved from active duty service under his Reserve commission on the date his permanent Regular Army commission became effective, i.e., on September 12, 1961. (See note 2, supra).

To argue, as Perry does, that his Reserve commission continues to this date, notwithstanding his acceptance of a permanent Regular Army commission, is to ignore the realities of his status. Service in a *reserve component* as a temporary officer and simultaneous service as a permanent officer in a Regular Army *component* at the same time are inconsistent. Even if one could retain a commission in the Army Reserve while also serving on active duty in a Regular Army component under a Regular Army commission he would not be serving *on active duty* under his Reserve commission at the same time he was serving on active duty under his Regular commission.

Thus, to argue that an honorable discharge certificate from his Reserve commission may still be issued at some far later date and thus give a much belated start to a reenlistment period is to contend for a construction of the statute that would be contrary to the intent of the Act. When Perry began serving on active duty as a Regular Army officer in a Regular Army component for all practical purposes his service as a Reserve officer in a Reserve component was terminated and the issuance of an honorable discharge certificate was not necessary to confirm that fact. When his status changed from a Reserve officer on temporary active duty, who was to be "retained on active duty until further notice," [11] to that of a *permanent* Regular Army officer, he no longer was serving on

temporary duty, nor was he a temporary officer.[12] In any event he was on the date of his Regular Army commission, September 12, 1961, effectively "relieved from active duty" as an officer in his Reserve component and that likewise triggered the running of the six month application period.

For these reasons, Perry is not entitled presently to exercise any reenlistment rights based on the termination of his service as a Reserve officer, because the ensuing statutory six month period within which he was required to apply for reenlistment has long since expired.

### III.

Appellant's second point is that "the statute must be construed to include the substantive provisions of previous legislation, including the acts of March 30, 1918, and July 14, 1939." Appellant Br. 21.

The 1918 act provided:

That any enlisted man of the Army of the United States who has heretofore been, or shall hereafter be, discharged to accept a commission in any *component* part of the Army of the United States, and who shall tender himself for enlistment within three months after the termination of his commissioned service, shall, subject to such examination for enlistment as is provided by law or regulation, be accepted and be restored to the grade held by him before being discharged to accept such commission; and in computing service for retirement and continuous-service pay he shall be credited with all time served with the forces of the United States, and his service shall be deemed continuous, notwithstanding the interruption thereof by the changes of status provided for herein.

Act of March 30, 1918, ch. 37, 40 Stat. 501. (emphasis added).

---

11. *See* note 3 *supra.*

12. The Senate Report on 10 U.S.C. § 3075 states:

The statutory nature of a Regular commission is significant. After an officer has been

placed on the Regular list, existing law provides no means for removing that officer except for cause, promotion passover, or retirement.

S.Rep.No.2420, 84th Cong., 2d Sess. 3 (1956).

However, arguing against the proposition that the existing statute must be construed to include all the substantive provisions of this 1918 act is the fact that the earlier statute was expressly repealed by the 1939 act. Act of July 14, 1939, ch. 267, § 2, 53 Stat. 1001. The specific language which repealed the 1918 act stated "The act approved March 30, 1918 (40 Stat. 501), is hereby repealed." Act of July 14, 1939, ch. 267, 53 Stat. 1001.

This removed the possibility that appellant could base any reenlistment right upon the *specific provisions* of the act of 1918. Congress, however, did replace the former act with a statute designed to accomplish the same general objective and in many respects carried forward the same general intent. The new statute provided:

> That hereafter any . . . *enlisted man of the Regular Army who shall serve on active duty as a Reserve Officer of the Army of the United States* . . . and whose active service as a commissioned officer shall terminate honorably shall be entitled . . . to reenlistment in the grade held prior to such commissioned service, without loss of service or seniority and without regard to whether a vacancy exists in the grade of warrant officer or in the appropriate enlisted grade: *Provided,* That application for . . . reenlistment shall be made within six months after the termination of such commissioned service. . . ."

(53 Stat. 1001) (emphasis added).

Assuming, in line with Perry's contention, however, that the 1918 statute is still applicable, we find that appellant does not comply therewith because he cannot satisfy the requirement that he "tender himself for reenlistment within three [now six] months after the termination of his commissioned service." The "commissioned service" there referred to is that which came into existence when he was "discharged to accept a commission," *i.e.,* his service in a Reserve component under his commission in the

Army Reserve. Clearly Perry cannot apply for reenlistment within three months after the termination of that commissioned service since that period began to run on September 12, 1961. For the same reason, he is unable to comply with the present statute and make *"application for reenlistment . . . within six months after the termination of [his] . . . commissioned service . . . ."* The termination of his commissioned service "on active duty as a Reserve Officer of the Army of the United States" occurred no later than September 12, 1961 when his appointment as a Second Lieutenant in the Regular Army became effective and he began serving on active duty in a Regular Army component.

### IV.

■ In addition to the foregoing claims, appellant points out that when he was discharged as an enlisted man in order to be commissioned as a Second Lieutenant in the Reserve he also received a temporary grade as a Second Lieutenant in the Army of the United States (AUS) and that to this very date he has continued to serve in temporary AUS grades up to his present rank of Major. From these facts he contends that when his service terminates with his Regular Army component, and he is discharged as a Regular Army officer, his service as a *temporary officer* with the rank of Major "in the Army of the United States" will also terminate and he will then be entitled under the statute to apply for reenlistment under section 3258. The controlling language of the 1939 Act, upon which Perry bases this contention, provided:

> That hereafter any . . . enlisted man of the Regular Army . . . who shall be discharged to accept a commission in the Army of the United States . . . shall be entitled . . . to reenlistment in grade held prior to such commissioned service . . . *Provided,* That application for . . . reenlistment shall be made within six months after the termination of such commissioned service . . . .[13]

**13.** We use the phraseology from the Act of July 14, 1939, as that language is the most favorable to Perry's contention.

(53 Stat. 1001). Perry's rights under this contention are to be gleaned from the specific statutory provisions, the entire legislative history of section 3258, the various changes that have been made in its provisions, and from the statements in committee reports and by Congressmen sponsoring the legislation.

As early as the Act of March 30, 1918, it was made clear that the Act was intended to benefit those former enlisted men who subsequently served under a "temporary commission" [14] and who had been "discharged to accept a commission in any *component part* of the Army of the United States . . .." [15] While subsequent amendments have removed the word "component" from its provisions, the idea that is embodied thereby has remained central to the true intent of the Act. Of course, since September 12, 1961, Perry has been serving under a permanent commission in a Regular Army component and not under a "temporary commission." Even assuming that the reference to the "commission in any component part of the Army of the United States" applied to AUS commissions, Perry's temporary AUS grade is *not* "a commission in [a] *component part* of the Army of the United States." The Department of Army Military Administrative Law Handbook, No. 27–21 (October 1973) states:

In time of war or national emergency declared by the President, a Regular officer or Reserve warrant officer may be appointed to a higher temporary grade (§ 3.5(b)(2)). [16]

Members of the Regular Army or Reserve may be members of the Army of the United States *without component* at the same time (§ 3.5(a)) (emphasis added). [17]

Temporary appointments of commissioned and warrant officers are made only in the Army of the United States *without component* (§ 3.5(b)). [18]

What happened to Perry here is that when he was discharged to accept his Reserve commission he was appointed to serve in the *Reserve component* of the Army, and the simultaneous AUS *grade* that he received was a [t]emporary appointment[] . . . in the Army of the United States" *without component.* [19] Thus, not only was Perry not discharged to accept a commission in the Army of the United States (AUS) but his AUS grade was *never* "in any *component part* of the Army of the United States." In short, Perry's various AUS grades, as with other Reserve and Regular Army officers, were mere auxiliary devices that were used as the vehicle to promote those serving on active duty in Reserve components or Regular Army com-

---

14. Mr. Speaker, at the last session of Congress a bill was passed which provided that an enlisted man in the Regular Army who accepted a commission in the National Guard could be reenlisted or restored to his position as an enlisted man *after his temporary commission expired.* This bill is intended to extend the provisions of that act so as to include any enlisted man who may take a commission in the National Army. There are men who have served for many years in the Army and have noncommissioned positions now such as sergeants and corporals. They do not wish to take a commission in any branch of the service if their length of service as an enlisted man in the Army should be impaired thereby.
56 Cong.Rec. 2874 (1918) (Remarks of Representative S. Hubert Dent, Jr., Chairman of the House Committee on Military Affairs) (emphasis added).

15. Act of March 30, 1918, ch. 37, 40 Stat. 501.

16. (a) In time of emergency declared by Congress or the President, and in time of war, the President may appoint any qualified person, including a person who is not a Regular or Reserve, in any temporary commissioned grade.
10 U.S.C. § 3444(a) (1970).

17. (c) Subject to subsections (a) and (b), a regular commissioned officer, or a reserve commissioned officer who is serving on active duty, may be appointed in a temporary grade that is equal to or higher than his regular or reserve grade, without vacating any other grade held by him. . . .
10 U.S.C. § 3442(c) (1970).

18. Temporary appointments may be made only in the Army *without specification of component.* (Aug. 10, 1956, c. 1041, § 1, 70A Stat. 195).
10 U.S.C. § 3441 (1970) (emphasis added).

19. 10 U.S.C. § 3441 (1970).

ponents. As such, Perry's various AUS grades, down to the present time, do not meet the standard of a "commission in [a] *component* part of the Army of the United States."

It therefore follows that the future termination of Perry's AUS grade, concurrently with his honorable discharge from his service as an officer in the Regular Army component, will not qualify him to reenlist in his prior enlisted grade. This distinction between temporary appointments *without* component and permanent appointments in the Army *with* component was spelled out in a committee report of the House of Representatives in 1941 when the Congress was considering such matters:

> The War Department, in submitting this measure for the consideration of Congress, pointed out that existing provisions of law authorize temporary appointments in the Army of the United States as distinguished from appointments in the *components* of such Army in time of war and that the enactment of this joint resolution would merely extend such authority to include the present emergency. It appears that this authority is necessary to enable the War Department to carry out sound personnel policies which dictate that the officer personnel of the Regular Army, the National Guard, and the Officers' Reserve Corps be considered at all times as separate continuing bodies of officers; that each be maintained at a permanent strength limited to the Army's needs and normal capacity to adequately train during normal times of peace; that during a time of war or national emergency the officers of these separate groups be merged into one group comprising the Officers' Corps of the Army of the United States; that this corps be then reinforced by the temporary appointment of certain specialists whose service, though highly desired in connection with particular projects during a time of war or emergency do not possess the military knowledge and gen-

eral qualifications which would justify their retention in a *component* of the Army of the United States after the emergency has terminated, and that this composite group also be expanded by the temporary appointment of officers in the Army of the United States so as to provide the great number of officers necessary for an expanded Army without overextending the normally organized Officers' Corps of the Regular Army, the National Guard, or the Officers' Reserve Corps.

H.R.Rep.No.954, 77th Cong., 1st Sess. 1–2 (1941) (emphasis added). From the foregoing, it is plain that an officer in the Regular Army serving on active duty, who also has a temporary *grade* in the Army of the United States (AUS), is not a temporary officer. He is a permanent officer who has a permanent grade and a *temporary (AUS) grade.*[20]

The concept of "temporary grade" in the Army of the United States is an artificial vehicle created as part of an accelerated promotion system. Although the system uses the Army of the United States or "AUS" grade as the vehicle for effecting the promotions, one holding a temporary grade in the Army of the United States is not thereby a temporary officer whose appointment is authorized by 10 U.S.C. § 3445 (1970). He is a permanent Regular or Reserve officer with a temporary grade higher than his permanent regular grade.

Perry is, thus, not a temporary officer and will not be entitled to any reenlistment rights when his temporary AUS grade is terminated concurrently with the termination of his service as an officer in the Regular Army.

V.

■ Perry also contends that he will satisfy the honorable discharge requirements of the statute when he receives his honorable discharge from his *Regular* Army commission pursuant to AR 635–120(11–1)

---

**20.** His AUS grade generally exceeds his Regular Army grade.

(1968) (Appellant App. at 15).[21] However, AR 635–120 applies only to "Regular Army officer[s]" and the honorable discharge of Perry from his permanent Regular Army commission issued pursuant to this regulation would not constitute an honorable discharge that will trigger a reenlistment right under section 3258. What that statute envisions is an honorable discharge from his Reserve commission or his relief from temporary active duty in a Reserve component. *See* text *supra* at p. 667.

■ All the reenlistment rights guaranteed by section 3258 refer to *temporary* reserve officers and their service on temporary active duty status with Reserve components and not to officers of the Regular Army with permanent commissions whose active duty service is with Regular Army components. Perry was effectively relieved from all vestiges of active duty as a Reserve officer on temporary active duty with a Reserve component when his Regular Army commission became permanent—if not three years prior thereto when he first began serving as a Regular Army officer on active duty with a Regular Army component. Therefore, Perry's honorable discharge from his service on active duty under his permanent commission in the Regular Army will not constitute the "termination of . . . service" or the "honorable discharge" contemplated by the statute to trigger the beginning of the reenlistment period.

## VI.

For the foregoing reasons we find that Perry does not qualify for reenlistment under the language of the statute. The statute grants reenlistment rights to former enlisted men on the termination of their service as officers on temporary active duty with Reserve components but denies the same reenlistment rights to former enlisted

men who accept Reserve commissions and subsequently are commissioned as officers in the Regular Army—even though the latter may be the better qualified men. In doing so, the statute distinguishes between *temporary* service with Reserve components and *permanent* service with Regular Army components.

As the facts of this case illustrate, however, the *actual* distinction insofar as temporary service is concerned is very small between a *former* enlisted man serving as a Reserve officer on temporary active duty and a *former* enlisted man serving on active duty during a wartime emergency as a Regular Army officer, subject to being passed over when the emergency abates. That it was the cessation of the extreme emergency in Vietnam that caused the Army to refuse to accept Perry's reenlistment application is apparent from the wording of the Order of August 14, 1973, that he received from the Secretary of the Army. *See* text at p. 665 *supra*. This Order admitted that the Army changed to "*more stringent* enlistment and grade determination criteria" than it had previously applied. Former enlisted men who had been commissioned as Regular Army officers bore the brunt of this change in policy. One could hardly blame a former enlisted man who had been commissioned as an officer in the Regular Army, had faced enemy fire, and had been decorated for valor,[22] for believing that the Army would continue its *former* "enlistment and grade determination criteria" and act as favorably on his application for enlistment as it had formerly and as it did under the statute for *Reserve* officers. However, unless the Army changes its present policy, congressional action is necessary if Perry and the others in the same situation are to be permitted to complete the short service necessary to qualify for

21. AR–635–120 (1968) provides:

  11–1. General. a. A Regular Army officer who has twice failed to be selected for promotion to the Regular Army grade of captain, major, or lieutenant colonel or, in the case of a warrant officer, to the next higher permanent warrant officer grade, will be honorably

discharged, with severance pay, if he is not eligible for retirement or is not within 2 years of qualifying for retirement on the date his discharge is required by paragraph 11–2. (Appellant App. 15).

22. Bronze Star with "V" device, earned in Vietnam. (Appellant App. 12).

the twenty-year retirement rights they seek. This could be accomplished in Perry's case by giving him credit for the time that he has served beyond November 1973 under the stays issued by the courts.

The order of the District Court is affirmed.

*Judgment accordingly.*